IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cr-00048-1 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| BRANDON OSTEIN | ) | |

**MEMORANDUM and ORDER**

Before the court is defendant Brandon Ostein's Motion to Suppress the Fruits of a Warrantless Facial Recognition Search (Doc. No. 86), in which the defendant asks the court to suppress "(1) the fruits of the facial recognition search; (2) the successive searches conducted by law enforcement on August 29, 2023, August 30, 2023, September 18, 2023, and January 24, 2024, respectively, triggered by the prior unreasonable facial recognition search; (3) all testimony of federal and State law enforcement personnel relating to observations made by them while engaged in said searches; (4) any statements made by Defendant Ostein to law enforcement during, and as the result of, the challenged searches; and, (5) any evidence obtained as a result of investigatory leads flowing from the tainted facial recognition search." (Doc. No. 86 at 1.) For the reasons set forth herein, the motion will be **DENIED**.

**I.    BACKGROUND**

A Criminal Complaint against defendant Ostein was filed in November 2023, charging him with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and two firearm-related charges. (Doc. No. 1.) Ostein was subsequently indicted, along with co-defendant Anthony Gloss, on charges of conspiring to intentionally possess with intent to

distribute fentanyl and cocaine, both Schedule II controlled substances, and possessing with intent to distribute fentanyl and cocaine. (Doc. No. 17.)

As alleged in the Criminal Complaint, agents with the Tennessee Bureau of Investigation ("TBI") were able to affirmatively identify Ostein, whom they suspected of being involved in the distribution of controlled substances, by using a picture of him taken by a manager of the apartment building in which was located an apartment that Ostein was using (but that was leased to someone else). (Doc. No. 1 ¶ 10.) The manager had taken the photograph of Ostein, whose identity was unknown at that time, because Ostein was purportedly rude to him, and the manager intended to use the photograph to have building management remove Ostein from the apartment he was using. (*Id.*) The manager provided TBI agents this image when he was questioned about the occupant of the apartment in question, and TBI agents took the image to the Nashville Airport Police Department ("NAPD") for assistance in identifying the individual portrayed in the photograph. (*Id.* ¶ 11.) The NAPD has "advanced facial recognition technology that searches airport records and various other public databases to compare facial identifiers." (*Id.*) Using this technology, the NAPD and TBI were able to link the individual in the photograph to an Instagram account that belonged to Ostein's minor son and, eventually, to identify Ostein. (*Id.* ¶¶ 11–12.)

The defendant's initial Memorandum in support of his Motion to Suppress argued that the TBI's practice of obtaining the assistance of the NAPD and, in particular, the NAPD's facial recognition software, was a warrantless search that violated his rights under the Fourth Amendment and that all evidence obtained as a result of that search must be suppressed. (Doc. No. 87.) He argued in particular that airport police officers' authority to use facial recognition software "exists strictly because 'screening passengers at an airport is [an] authorized administrative or special needs search [where] the primary goal is to protect the public." (*Id.* at 4–5.) The defendant

cited federal law that prohibits the use of facial recognition programs employed by the Transportation Security Administration ("TSA") "outside the scope of aviation security and terrorism prevention." (*Id.* at 5 (citing 6 U.S.C. § 1118).)

The government filed a Response, refuting the defendant's assumption that technology or screening images used by the TSA were implicated in this case. (Doc. No. 94.) More specifically, the government explained that the technology at issue was not some specialized technology that can only be used within an airport. Rather, "[l]aw enforcement used a lawfully obtained photo to feed into a software program which scoured the internet and found a photo that was posted to a public Instagram account. Agents used clues from the Instagram account to identify the Defendant as the person they were investigating for a drug trafficking crime." (*Id.* at 5.) The government pointed out that the manager who took the known photograph was not a member of law enforcement or acting as an agent of, or at the behest of, law enforcement when he took the photograph. He took it for his own purposes before law enforcement approached him and then voluntarily provided it when he was approached by law enforcement. The government also argued that Ostein did not have a reasonable expectation of privacy in photographs of himself posted publicly by a third party on the internet.

After the government filed its Response, the court directed it to file an Affidavit from an appropriate NAPD employee describing in detail the software program used to identify Ostein. (Doc. No. 95.) The government complied by filing the Affidavit of Kadi Smith, who attests that she is a detective with the NAPD assigned to the Criminal Investigations Division. (Doc. No. 96-1 ¶ 1.) Smith explains that she is trained on the facial recognition software used by the NAPD and uses it frequently in the course of her job duties. (*Id.* ¶¶ 3–4.) She also describes the software program at issue, called Clearview AI, and how it is used. First, the program user uploads a digital

photograph into the program. The program scans the facial features of the person in the photograph, "determines the facial characteristics" of the subject, and then "searches through numerous open-source databases on the internet for images containing similar facial features. If the program finds such an image, it displays the found image to the user." (*Id.* ¶ 5.) The "open-source databases" the program searches include social media programs like Facebook, online photo albums, and other internet sites available for public viewing. (*Id.* ¶ 6.) Clearview AI does not search photographs taken by TSA at screening lines at the airport, which remain the property of TSA and are not available to the NAPD. (*Id.* ¶ 7.)

Following the filing of the Smith Affidavit, the court entered a second Order ("show cause Order"), noting that the defendant's Motion to Suppress relied "entirely upon the false premise that investigation officers utilized facial recognition software connected to photographs taken in the [TSA's] security lines at the Nashville Airport" and directing the defendant to show cause why his motion should not be summarily denied. (Doc. No. 97.)

The defendant filed a Response and then a Supplemental Response to the show cause Order. (Doc. Nos. 98, 99.) The initial Response argues succinctly that the Smith Affidavit is "silent as to the authority of the [NAPD] to conduct 'narcotics related investigations' outside the four walls" of the Nashville International Airport and that "[j]ust because [the NAPD] has purchased the technology does not mean that law enforcement can use it for an investigation outside of [the airport] without judicial supervision, evidenced by the issuance of a search warrant supported by probable cause." (Doc. No. 98 at 2.)

The Supplemental Response, filed the next day, adds that, pursuant to Tenn. Code Ann. §§ 22-5-113, 42-3-108, and 38-3-113, the NAPD had limited authority to police the airport and airport property but no "statutory grant of extraterritorial jurisdiction . . . to conduct criminal

investigations outside the airport premises" and no authorization under the circumstances presented here to make arrest outside their primary jurisdiction. (Doc. No. 99 at 1–2.)

At the court's direction, the government filed a Response to these arguments. (Doc. No. 101.) The government argues that whether the NAPD had jurisdiction has no bearing on whether a Fourth Amendment violation occurred. It maintains that the use of facial recognition software was not a "search" for Fourth Amendment purposes and that, even assuming it was a search, a lack of jurisdiction would not invalidate a constitutionally sound search. (*Id.* at 1–2.) It also argues that the NAPD did not conduct the investigation, conduct a search, or effect an arrest and therefore did not exceed its jurisdiction. (*Id.* at 2.)

## II. DISCUSSION

Little discussion of the defendant's motion is necessary at this juncture. The initial basis for the motion was the false premise that the TBI accessed TSA's facial recognition capabilities. The defendant's Supplemental Response does not show that the TBI's act of effectively borrowing widely available technology from a sister law enforcement agency constituted a search or, more to the point, a search that violated the defendant's rights under the Fourth Amendment.

To challenge a search as a violation of the Fourth Amendment, a person must have had both a subjective expectation of privacy in the property searched and that expectation must have been objectively reasonable. *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001) (citing *Minnesota v. Olson*, 495 U.S. 91, 95–96 (1990)). The technology at issue here is not unlike the license plate readers that courts have found do not constitute searches that violate the Fourth Amendment. *See, e.g.*, *Rinaldi v. Sylvester*, No. 24-CV-272 (KMK), 2025 U.S. Dist. LEXIS 187115, at *50 & n.13 (S.D.N.Y. Sep. 19, 2025) (collecting cases in support of the proposition that "nearly every court . . . that has considered the issue . . . has held that queries of [license plate reader] databases do not constitute Fourth Amendment searches").

Likewise, this court finds that, even if the use of facial recognition technology qualifies as a "search," the defendant did not have an objectively reasonable expectation of privacy in publicly posted images of himself, for purposes of the Fourth Amendment. *Accord, e.g.*, *United States v. Rosenschein*, 136 F.4th 1247, 1257 (10th Cir. 2025) ("Both our precedents and several out-of-circuit cases also reaffirm what common sense makes clear: Individuals have no reasonable expectation of privacy in images they post to a reportable online chatroom with strangers." (collecting cases)). Consequently, the use of facial recognition software to compare a known photograph with images posted on publicly accessible websites did not violate the Fourth Amendment. Clearly, if the TBI itself possessed the same technology, it could use it without violating the constitution. Merely borrowing another agency's technology does not transform a constitutional search into an unconstitutional search, irrespective of whether it might arguably have violated state law. *See Guest*, 255 F.3d at 334 (search and seizure by officers acting outside their jurisdiction under state law did not violate the Fourth Amendment).

### III.  CONCLUSION AND ORDER

As set for herein, the defendant's Motion to Suppress the Fruits of a Warrantless Facial Recognition Search (Doc. No. 86) is **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge